UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20888-CIV-SEITZ/SIMONTON

NADJA ABREU,

      **Plaintiff,**

vs.

ALUTIIQ-MELE, LLC,
et al.,

      **Defendants.**

_____/

<u>**REPORT AND RECOMMENDATION RE:  DENYING
DEFENDANTS' MOTION FOR SANCTIONS**</u>

      Presently pending before the Court is the Verified Motion for Rule 11 and Section 1927 Sanctions filed by Defendants Alutiiq-Mele, LLC ("Mele"), Alutiiq 3SG, LLC ("Alutiiq 3SG"), and Alutiiq Global Solutions, LLC ("Alutiiq Global") (DE # 43).  The Honorable Patricia A. Seitz, United States District Judge, has referred the Motion to the undersigned United States Magistrate Judge for a Report and Recommendation (DE # 19).  The Motion is fully briefed (DE ## 44, 45, 46).  In addition, on Friday, July 6, 2012, the undersigned held an evidentiary hearing on the Motion (DE ## 52, 56).  For the reasons stated below, the undersigned recommends that the Motion be denied.

      I.     <u>**BACKGROUND**</u>

      A detailed recitation of this case's procedural history is necessary in order to provide context for the parties' positions.  The undersigned, however, highlights the following three principal issues, as more fully described below, because they form the basis for Defendants' Verified Motion:  (a) whether Plaintiff identified the proper Defendant in her Complaint, (b) whether Plaintiff was required to exhaust  contractual grievance procedures before bringing suit, and (c) whether Plaintiff's failure to serve

certain Defendants is sanctionable.  With these issues in mind, the procedural history follows.

On January 18, 2011, Plaintiff Nadja Abreu filed a two-count Complaint against Mele in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (DE # 1-2).  In her Complaint, Plaintiff alleges that she was an employee of Mele, which provided security services for federal buildings.  Specifically, Plaintiff alleges that on or about February 9, 2010, Mele and/or Alutiiq Global, an alleged alter-ego or agent of Mele, suspended her from her position without just cause.  On or about September 8, 2010, Plaintiff continues, she was terminated from her position, purportedly based on an incident occurring on September 2, 2010, when Plaintiff allegedly failed to perform her duties by letting a vehicle pass without presenting proper identification, and then failing to report this incident to a supervisor.  Mele's actions, Plaintiff concludes, violated the Collective Bargaining Agreement (the "CBA") executed by Mele, Alpha Protective Services, Inc., and the United Government Security Officers of America International Union and UGSOA Local # 270, of which Plaintiff alleges she is a third-party beneficiary. Based on these allegations, Plaintiff's Complaint contains two counts for breach of a written contract by Mele (DE # 1-2).  In particular, Count I alleges a breach of the CBA because Mele suspended Plaintiff without just cause or pursuant to the customer's request, as required by the CBA.  Count II similarly alleges improper discharge without just cause or pursuant to customer request.

On March 15, 2011, Defendant Mele removed the case to federal court, based upon subject matter jurisdiction, contending that Plaintiff's claims were completely preempted by federal labor law pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) ("Section 301") (DE # 1).  Defendant immediately thereafter filed a Motion to Dismiss the Complaint for failure to state a claim and lack of subject matter jurisdiction or, alternatively, summary judgment, based upon Plaintiff's alleged

failure to sue the correct defendant (DE # 4).  Defendant asserted that the Complaint should be dismissed for several reasons.  Among them, Defendant claimed that, because Plaintiff's claims were preempted by Section 301, the Complaint must be dismissed. Defendant also contended that Plaintiff failed to allege that she exhausted the grievance procedures required by the CBA, which warranted dismissal.  In addition, regarding the correct party, Defendant asserted that Alutiiq 3SG, a separate legal entity, became the Plaintiff's employer as of February 1, 2010.  Therefore, Defendant Mele contended that it was not Plaintiff's employer during the relevant time period of the Complaint's allegations (DE # 4 at 4, 9-10).  The Motion, however, was denied as moot (DE # 6) when Plaintiff filed her First Amended Complaint (DE # 5).

In the First Amended Complaint, Mele remained the only named Defendant, but Plaintiff added the allegation that Alutiiq 3SG was an alter-ego or agent of Mele.  Plaintiff also replaced her original two counts for breach of contract, with one count for breach of the CBA, pursuant to Section 301.  The remainder of the First Amended Complaint is substantially similar to, or the same as, the original Complaint.

Defendant, again, filed a Motion to Dismiss the First Amended Complaint or, alternatively, for summary judgment, based upon many of the same arguments raised in its first Motion to Dismiss (DE # 8).  Notably, Defendant again detailed why it believed it was the wrong defendant in this matter.  Defendant stated that, as of February 1, 2010, Plaintiff's union recognized Alutiiq 3SG as the successor of Mele under the CBA, as noted by Amy Shimek, Vice President of Legal Affairs and Associate General Counsel for Alutiiq, LLC, in her Affidavit.  In addition, Defendant further expanded its contention that Plaintiff had failed to exhaust the dispute resolution procedures under the CBA, as required to bring a claim pursuant to Section 301.

In response (DE # 9), Plaintiff argued that the CBA did not require or was, at least, ambiguous as to whether the dispute resolution procedures named therein were

3

mandatory prior to bringing suit.  Specifically, Plaintiff pointed out that, while the CBA states that disputes are to be resolved pursuant to the CBA's procedures, the language of some of the procedures suggests that some are optional measures.  Moreover, Plaintiff continued, Section 7.9 of the CBA, which refers to the possibility of litigation to resolve disputes, does not require exhaustion of the CBA's grievance and arbitration procedures prior to filing suit.

Plaintiff also defended her naming of Mele as the proper Defendant.  Specifically, citing cases in support, Plaintiff noted that Mele was the party-signatory to the CBA, and that the recognition of Alutiiq 3SG by Plaintiff's union as Plaintiff's employer did not necessarily mean that Alutiiq 3SG was contractually bound to the CBA.  Plaintiff also cited the Affidavit of Amy Shimek to support her contention that Mele, as a wholly-owned subsidiary of Alutiiq, LLC, "may currently have a highly integrated relationship with Alutiiq 3SG."  Plaintiff further argued that Alutiiq 3SG may be a joint employer (DE # 9).

In reply (DE # 11), Defendant attached an order from another case in this District, which was entered after Plaintiff filed her response to Defendant's second Motion to Dismiss.[1]  The other order considered the same CBA at issue in this case, and the District Judge in that case expressly held that the CBA "unequivocally describes a compulsory grievance procedure, not an elective one."  *Jean-Jacques v. Alutiiq-Mele, LLC*, No. 11-20721-CIV-ALTONAGA, DE # 25 at 6.  As for naming the proper defendant, Defendant replied that Plaintiff's claims that the Alutiiq entities are highly integrated or joint employers were "only speculation"  (DE # 11).

After Defendant's second Motion to Dismiss was fully briefed, on April 12, 2011, Defendant served a "Rule 11" letter on Plaintiff's counsel (DE ## 43 at 3; 43-1). Approximately 27 days later, and before Defendant's second Motion to Dismiss was

---

[1] See the Order (DE # 25) in *Andre Jean-Jacques v. Alutiiq-Mele, LLC*, Case No. 11-20721-CIV-ALTONAGA.

resolved, Plaintiff filed a Motion for Leave to Amend the Complaint (DE # 14).  The proposed Second Amended Complaint added as Defendants Alutiiq 3SG and Alutiiq Global, along with an allegation that Alutiiq 3SG was Plaintiff's successor employer.  It also alleged facts to support a claim of racial/ethnic discrimination by Mark Brown, an alleged contract manager of Alutiiq Global, in connection with Plaintiff's terminated employment.  Plaintiff also continued to allege breaches of the CBA pursuant to Section 301.  The proposed Second Amended Complaint included (a) a claim against Mele for breach of the CBA's implied just cause requirement (Count I); (b) a claim similar to Count I but against Alutiiq 3SG, having "explicitly or implicitly accepted responsibility for [Mele's] compliance with the CBA" (Count II); (c) a claim similar to Count II but against Alutiiq Global (Count III); (d) and 42 U.S.C. § 1981 discrimination claims against Alutiiq 3SG (Count IV) and Alutiiq Global (Count V).

Defendant opposed Plaintiff's Motion for Leave to Amend for the same reasons it had set forth previously regarding the viability of Plaintiff's claims (DE # 16).  In her Reply, Plaintiff acknowledged that the District Court in the *Jean-Jacques* case reached an adverse conclusion regarding the need to exhaust administrative remedies pursuant to the CBA, but Plaintiff argued that the plaintiff in that case had failed to raise certain arguments regarding the CBA that might have affected the Court's ruling.  In addition, with regard to the discrimination claims, Plaintiff asserted that she was not required to pursue the dispute resolution procedures set forth in the CBA because she had not individually signed the CBA, as required by law.

The Court granted Plaintiff's Motion for Leave to Amend (and denied Defendant's second Motion to Dismiss as moot), but added words of warning (DE # 18).  With regard to exhaustion of the CBA's dispute resolution procedures, the Court stated that "despite Plaintiff's argument to the contrary, the language of the CBA makes the grievance procedure mandatory prior to filing suit" (DE # 18 at 4).  The Court added,

> Accordingly, in order to prevail on her claim, Plaintiff must demonstrate that she complied with the grievance procedure set out in the CBA.   If she has not done so, she will not prevail. Furthermore, pursuant to Federal Rule of Civil Procedure 11, prior to filing a Second Amended Complaint, counsel has an obligation to make a reasonable inquiry as to whether Plaintiff complied with the grievance procedure.

(DE # 18 at 5).  With regard to whether Mele and Alutiiq Global were properly named Defendants, the Court noted that while Plaintiff's allegations regarding some theory of joint employment or agency relationship

> may squeak by on a motion to dismiss, as Plaintiff is considering whether to file a Second Amended Complaint, it is incumbent on counsel to promote the spirit, as well as the letter, of Federal Rules of Civil Procedure 1 and 11 and avoid wasting time and resources pursuing the incorrect parties.  Plaintiff should only proceed against her former employer and [Alutiiq Global] if there are facts warranting their involvement in this case.

(DE # 18 at 5-6).  Finally, the Court cautioned that, while Plaintiff's Motion for Leave was granted, "the Court strongly cautions Plaintiff and counsel that if Plaintiff cannot ultimately establish that she complied with the CBA's mandatory grievance procedure, the imposition of Rule 11 sanctions may be appropriate" (DE # 18 at 6).

The following day, Plaintiff filed her Second Amended Complaint (DE # 21), which appears to be identical to her proposed Second Amended Complaint that was included in her Motion for Leave to Amend.  Along with the Second Amended Complaint, Plaintiff filed a notice that Defendants Alutiiq Global and Alutiiq 3SG should be added to the case (DE # 22).

Once again, Defendant Mele (the only served Defendant) filed a Motion to Dismiss or, alternatively, a motion for summary judgment, which restated the same collection of bases for dismissing the Complaint and/or awarding Defendant summary judgment that Defendant had set forth in prior pleadings (DE # 24).

In response (DE # 25), Plaintiff appeared to argue that the CBA only required her to attempt to use the CBA's grievance procedures, but did not require her to exhaust

them, prior to bringing suit.  Moreover, Plaintiff asserted, at least some of the grievance procedures are elective; Plaintiff argued that the arbitration provisions as written were optional.  In addition, Plaintiff attempted to describe in more detail Defendant's breach of the CBA's just cause clause.  Finally, with respect to the properly named defendant-parties, Plaintiff asserted that the identified Alutiiq entities could be considered a single employer because they had common management, shared common corporate officers, were all owned by one corporate entity (Alutiiq LLC), and, at least in part, had interrelated operations and centralized control of labor relations (DE # 25).

In its Reply (DE # 27), Defendant pointed out that Plaintiff did not claim that she exhausted the dispute resolution procedures, as required by the CBA.  Relatedly, Defendant argued that, while Plaintiff admittedly participated in the grievance procedures, she failed to exhaust them when she voluntarily withdrew from them, and focused on her claims in this litigation.  Among other issues in Defendant's Reply, Defendant contended that Plaintiff's unsubstantiated "single employer" theory failed to justify her continually naming Alutiiq entities (other than Alutiiq 3SG) as defendants in this case (DE # 27).

While Defendant Mele's third fully briefed Motion to Dismiss was pending before the Court, Defendants Alutiiq 3SG and Alutiiq Global moved to dismiss the Second Amended Complaint (DE # 28), primarily because they were not properly served.  Specifically, these Defendants' registered agent was purportedly insufficiently served via United States postal mail only.  Therefore, these Defendants contended, the Court lacked jurisdiction over them.  The Defendants raised other arguments as well.  Similar to Defendant Mele's earlier motions, these parties argued that Plaintiff had failed to exhaust the grievance procedures under the CBA, and had failed to allege any breach of the CBA.  They further contended that Plaintiff failed to allege any claim for discrimination or

retaliation pursuant to 42 U.S.C. § 1981.  In addition, based upon similar arguments made by Mele earlier, Alutiiq Global alleged that it was an improperly named defendant.

In her Response (DE # 32), Plaintiff raised many of the same arguments raised in her response to Defendant Mele's fully briefed Motion to Dismiss, pending before the Court.  Specifically in regard to proper service, Plaintiff argued that certified mail satisfies the delivery requirements as that term is used in Federal Rule of Civil Procedure 4(h)(1)(B).  Plaintiff also refuted the Defendants' claims that she failed to sufficiently allege discrimination by these parties.

Along with Defendants' pending motions, on August 11, 2011, the Defendants served a "Rule 11" letter on Plaintiff's counsel (DE ## 43 at 4; 45-1 at 37-49).

On November 7, 2011, the Court first entered its Order Granting Motion for Summary Judgment (DE # 36), which granted Mele's alternative motion for summary judgment on the basis that Mele was not a properly named party to the suit (DE # 36).  In so ruling, the Court stated that Plaintiff had failed to negate the alleged fact that Plaintiff was not employed by Mele during the time period in question in this case.  The Court noted that Plaintiff, in responding to the motion for summary judgment, failed to set forth facts to support its alter-ego/agency theory.  In granting the motion on this basis, the Court declined to address the other bases of Mele's Motion.  At the same time, the Court entered the Order Granting Motion to Dismiss (DE # 37), which granted Alutiiq 3SG and Alutiiq Global's Motion to Dismiss on the basis that they were not properly served.  The Court did not find the cases cited by Plaintiff to be persuasive and noted, "Thus, there is no real dispute that service by certified mail does not comply with federal rules or Florida law" (DE # 37 at 4).  In granting these Defendants' Motion in this respect, the Court denied the Motion in all other respects, and granted Final Judgment in favor of Defendant Mele (DE # 38).

Plaintiff thereafter moved for an extension of time to properly serve the other Defendants, arguing that, even if Plaintiff could not establish good cause to warrant an extension of time, Plaintiff had a good faith basis for believing that service by certified mail would be sufficient under the Federal Rules of Civil Procedure and related case law (DE ## 39, 41).  In the Order Denying Motion for Extension of Time to Serve (DE # 42), the Court stated Plaintiff failed to establish good cause.  The Court continued that it was unreasonable for Plaintiff to rely upon unpublished district court opinions outside the Eleventh Circuit Court of Appeals when the Eleventh Circuit and this Court have directly addressed this issue and found such service insufficient.  Notably, the Court cited a case in which Plaintiff's counsel was the same.  Moreover, the decisions cited by the Court were issued well before the expiration of the period in which to serve these Defendants.  Thus, the Court denied Plaintiff's Motion.

## II.    DEFENDANTS' MOTION FOR SANCTIONS

### A.    Defendants' Position

Twenty-three days after the Order Denying Motion for Extension of Time to Serve (and 51 days after the Final Judgment was entered), the Defendants (including Mele, Alutiiq 3SG and Alutiiq Global) filed their Verified Motion for Rule 11 and Section 1927 Sanctions (DE # 43).  In the Verified Motion, Defendants recount the procedural history of the case in an effort to establish Plaintiff's wrongdoing in pursuing her claims.  Defendants allege that Plaintiff pursued the case despite a lack of evidence, and did so "frivolously and vexatiously, ignoring the multitude of facts [that] completely negate the validity of Plaintiff's claims" (DE # 43 at 5).  Accordingly, Defendants seek sanctions (in the form of attorneys' fees) for Plaintiff's alleged unreasonable actions, from Plaintiff and her counsel.

Defendants primarily assert that Plaintiff ignored several attempts by defense counsel, from early in the case, to alert Plaintiff to the proper defendant-employer.

Defense counsel points out that she offered to accept service on behalf of the properly named party if Plaintiff would amend her complaint.  Nonetheless, Defendants contend, Plaintiff continued to pursue the improperly named Mele, despite the Court's own warning that Plaintiff's counsel might be subject to sanctions if the facts did not warrant naming all of the Defendants that Plaintiff had named in her Second Amended Complaint. Defendants also contend that Plaintiff's neglect to serve the other Alutiiq entities after naming them in the Second Amended Complaint entitles Defendants to the reasonable fees incurred in defending against Plaintiff's suit.  Defendants further assert that sanctions pursuant to these rules are warranted based upon Plaintiff's continued pursuit of her frivolous claims.  Specifically, Defendants state that Plaintiff continued to assert that she need not exhaust the dispute resolution procedures required by the CBA, despite the order of another court (in *Jean-Jacques*) and the Order in this case stating that such procedures must be exhausted before bringing suit.

Based on the above actions, Defendants assert as a basis for sanctions 28 U.S.C. § 1927 or Federal Rule of Civil Procedure 11 for Plaintiff's counsel having unreasonably and vexatiously multiplied the proceedings.  Defendants, however, also assert that attorneys' fees are available to a prevailing party in Section 301 cases where a suit is found to be frivolous or brought in bad faith.  Defendants contend that Plaintiff's claims under Section 301 were without any legal support, and that Plaintiff was well aware of this since at least the time of the District Judge's order that was entered in the *Jean-Jacques* case regarding the mandatory nature of the dispute resolution procedures of the CBA.  As yet another basis for fees, Defendants declare that they are entitled to fees pursuant to  42 U.S.C. § 1988(b) since Defendants prevailed on Plaintiff's claims of discrimination pursuant to 42 U.S.C. § 1981, which purportedly lacked merit.

Finally, Defendants provide a calculation of their attorneys' fees, which total $26,650.00, describing the background of counsel and providing records for the hours of work incurred, to establish that the amount is fair and reasonable.

      B.    <u>Plaintiff's Position</u>

In Response (DE # 44), Plaintiff first asserts that the Verified Motion has been filed simply to harass her and her counsel. Next, Plaintiff recounts her claims from the case in arguing that her positions have always been reasonable. As a procedural matter, Plaintiff argues that Rule 11 sanctions are not appropriate because the Verified Motion was filed after final judgment, which negates the safe harbor provision of the Rule. In addition, Defendants allegedly ultimately filed a different motion for sanctions than the version served on Plaintiff. Finally, Plaintiff contends that Defendants are not entitled to fees pursuant to 42 U.S.C. § 1988(b) because "Plaintiff and Plaintiff's counsel did not refuse to acknowledge clear precedent and did not assert a claim [that] was based knowingly on a nonexistent interest." In conclusion, Plaintiff states that the Court should consider sanctions against defense counsel for their harassment of Plaintiff and her counsel.

      C.    <u>The Evidentiary Hearing</u>

On Friday, July 6, 2012, the undersigned held an evidentiary hearing on Defendants' Motion (DE # 56). Prior to the hearing, Plaintiff filed several documents, consisting primarily of filings from other cases and certain correspondence (DE ## 46-50), which Plaintiff asked to be made part of the record at the hearing.

Specifically, Plaintiff filed (as DE # 46 in this case) Defendant's Verified Motion for sanctions in *Saint Fleur v. Alutiiq-Mele, LLC*, No. 11-21511-CIV-UNGARO in this District (DE # 60 in that case), along with the related Response and Reply (DE ## 63, 66), and the related Order on Motion for Sanctions (DE # 71), which denied the Verified Motion. Plaintiff does not explain how these documents support her contentions. To argue that

Plaintiff had sued the proper Alutiiq entity in this case, Plaintiff also filed certain documents from *Jean-Jacques*.  In particular, Plaintiff argues that, even though Alutiiq 3SG was arguably Andre Jean-Jacques' employer when he was discharged, Mele implicitly acknowledged (in its Motion to Dismiss the Amended Complaint in *Jean-Jacques*, DE # 13 at 7) that Mele discharged Jean Jacques.  Also related to *Jean-Jacques*, to contradict evidence of Alutiiq 3SG as the sole employer, Plaintiff filed in this case correspondence regarding Jean-Jacques' termination, which included his Notice of Termination on the letterhead of Alutiiq Global.  Plaintiff has set forth a similar contention with a similar document with regard to Plaintiff in this case.  Finally, Plaintiff filed selected responses from FOIA requests she had submitted, to support the contention that Alutiiq 3SG took over liability under the CBA from Mele in February 2010, but that the two entities shared a common corporate parent or were otherwise affiliated (DE ## 49, 50).

At the hearing, both Plaintiff and Defendants stated that they did not wish to bring before the Court any additional evidence regarding the Motion (except Plaintiff's filings just prior to the hearing, as noted above), relying, instead, on the record established to date (DE # 56 at 4, 9-10). [2]

---

[2] After the evidentiary hearing, Plaintiff submitted additional materials in support of her Response to the Verified Motion, including the following:  (a) filings from the docket of *Abreu v. Alutiiq 3SG, LLC*, No. 12-20010-CIV-SEITZ in this District, to argue that the case is a continuation of this case, and an order of the United States District Court for the Northern District of Alabama (DE # 53); (b) the Order Denying Motion for Reconsideration in *Adams v. Alpha Protective Services*, Case No. 10-23060-CIV-SEITZ in this District, to argue the sufficiency of service (DE # 54); and (c) filings from the above-noted *Jean-Jacques* case, to argue joint employment (DE # 55).  The undersigned notes that Defendants have filed no motion to strike these filings.  Nonetheless, because Plaintiff filed these materials after the evidentiary hearing without leave of the Court, although they arguably might support conclusions reached in this Report and Recommendation, they have not been considered by the undersigned and do not alter the analysis herein.

III.   **LAW AND ANALYSIS**

    A.   **Sanctions Pursuant to Rule 11 Are Not Warranted.**

        1.   **Introduction**

Defendants move to assess, against Plaintiff and her counsel, Defendants' attorneys' fees pursuant to Federal Rule of Civil Procedure 11.  The undersigned, therefore, considers whether Plaintiff and/or Plaintiff's counsel's actions warrant sanctions under Rule 11.

Pursuant to Federal Rule of Civil Procedure 11(b), any individual who files a paper with the Court implicitly certifies that, to the best of that person's knowledge after a reasonable inquiry:

    (1)    [the paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Regarding Rule 11's "safe harbor" provision and requirement to file a motion for sanctions by separate order, Rule 11(c)(2) provides as follows:

Motion for Sanctions.  A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

A motion for sanctions under Rule 11 demands a two-step inquiry, which requires a determination as to (1) whether the challenged contention is objectively frivolous; and, if so, (2) whether a reasonable inquiry would have revealed that the contention was frivolous. *See Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995). "The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances.'" *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Even assuming that the filing of an initial paper does not violate Rule 11 based on the circumstances at the time the paper was signed, the filing of an amended paper that does not "substantially address[ ]" matters that have become frivolous based on newly discovered facts "violates the duty to conduct a reasonable pre-filing inquiry into fact." *Gutierrez v. City of Hialeah*, 729 F. Supp. 1329, 1334 (S.D. Fla. 1990). "Sanctions are warranted when a party exhibits a 'deliberate indifference to obvious facts.'" *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002). Rule 11 sanctions may be imposed both against a party and against counsel. *See Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). Rule 11 sanctions do not require a finding that a party acted in bad faith. *See Byrne v. Nezhat,* 261 F.3d 1075, 1105-06 (11th Cir.2001) ("[I]f, after dismissing a party's claim as baseless, the court finds that the party's attorney failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound.").

### 2.    Analysis – Procedural Points

At the outset, the undersigned finds that Defendants are not barred from filing their Verified Motion with respect to Rule 11 simply because it was filed after Defendant was awarded summary judgment and Final Judgment was entered in Defendant's favor. Plaintiff argues that a Rule 11 motion cannot be considered if it is filed after the offending pleading has been disposed of by the Court, because such action by the Court would offend the Rule's safe harbor provision. In essence, Plaintiff argues that, as soon as the

Court awarded summary judgment in favor of Defendant Mele and entered Final Judgment, Plaintiff no longer had the opportunity to withdraw the allegedly offensive Second Amended Complaint, in contravention of Rule 11's safe harbor provision.  In so arguing, Plaintiff cites *Gwynn v. Walker*, 532 F.3d 1304, 1308-09 (11th Cir. 2008), which states, "We agree with the Second, Fourth, and Sixth Circuits that the service and filing of a motion for sanctions 'must occur prior to final judgment or judicial rejection of the offending' motion."  *Id.* at 1309 (citation omitted).  While this language, out of context, undoubtedly supports Plaintiff's position, *Gwynn* is distinguishable; it was decided in the context of whether final judgment, entered *before* expiration of the 21-day safe harbor period, precluded a sanctions motion.  Moreover, the Second, Fourth and Sixth Circuit cases identified concerned fact patterns similar to *Gwynn*, i.e., when a party was not afforded the 21-day safe harbor before final judgment.[3]  Thus, the quoted language continues, "Any argument to the contrary renders the safe harbor provision a mere formality.  The provision cannot have any effect if the court has already denied the motion; it is too late for the offending party to withdraw the challenged contention."  *Id.* (citation omitted).

In contrast, in this case, there is no question that Plaintiff was afforded substantially more than the 21 days prescribed by Rule 11 to withdraw the Second Amended Complaint; Plaintiff was served with Defendant's Rule 11 letter on August 11, 2011, and the Court did not award Defendant summary judgment and enter Final Judgment until November 7, 2011.[4]  Thus, the policy concerns of *Gwynn* are not

---

[3] *Gwynn* considered Federal Rule of Bankruptcy Procedure 9011, but the court in *Gwynn*, in reviewing and adopting the rule from Rule 11 cases from the Second, Fourth and Sixth Circuit Courts of Appeal, notes that Rule 9011 is "substantially identical" to Rule 11.  532 F.3d at 1308.

[4] Defendants also served Plaintiff with their Verified Motion for Sanctions on December 5, 2011, *after* the Court entered its Final Judgment (DE # 45-1).  Since this service could not provide a safe harbor period, it is ineffective for the reasons stated in *Gwynn*.

implicated, and its rule, likewise, is not appropriate under these facts.  Instead, Plaintiff was afforded almost three months to withdraw the Second Amended Complaint and chose not to do so.  Therefore, the Court's action did not short circuit any opportunity of Plaintiff to withdraw the allegedly offensive pleading.  *See Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 552-53 (7th Cir. 2011) (noting that safe harbor provision was satisfied when related motion was filed more than two years after notice was served – and 23 days after the district court dismissed the suit); *Kaplan v. Burrows*, No. 6:10-cv-95-Orl-35DAB, 2011 WL 5358180, at *1, 4 (M.D. Fla. Sept. 6, 2011) (finding the 21-day safe harbor provision satisfied where motion for sanctions was served more than a year before summary judgment was entered, after which the motion was filed), *adopted in relevant part as the order of the court*, 2011 WL 5358666, at *1 (M.D. Fla. Oct. 31, 2011). Accordingly, Defendants are not precluded from seeking sanctions by invoking Rule 11.

In addition, as an alternative procedural challenge to Rule 11 sanctions, Plaintiff contends that a motion for sanctions pursuant to Rule 11 has been improperly brought because it was included with other motions, namely, for sanctions pursuant to 28 U.S.C. § 1927 and 42 U.S.C. § 1988.  While Rule 11(c)(2) requires that a motion for sanctions be made by separate motion, the Rule does not require that a motion for sanctions pursuant to Rule 11 be brought separately from a motion for sanctions pursuant to other bases. Instead, the Rule prohibits combining a motion for sanctions with other motions that do not seek sanctions.  Courts consistently have allowed parties to consolidate in one motion sanctions based upon Rule 11 with those pursuant to other bases.  *Compare, e.g.*, *Univ. Creek Assocs. II, Ltd. v. Boston Am. Fin. Group, Inc.*, 101 F. Supp. 2d 1370, 1371-73 (S.D. Fla. 2000) (granting motion for sanctions pursuant to Rule 11 and 28 U.S.C. § 1927, finding sanctions under both bases appropriate), *with Rubio v. Turner Unified Sch. Dist. No. 202*, 475 F. Supp. 2d 1092, 1101-02 (D. Kan. 2007) (finding procedurally deficient Rule 11 motion because it had been combined with a motion to strike and

dismiss, and did not satisfy the safe-harbor provision). Therefore, Defendants' Verified Motion for sanctions pursuant to Rule 11 will not be rejected on this basis.

The undersigned further rejects Plaintiff's objection that Defendant's Verified Motion with regard to Rule 11 sanctions must be denied because Defendants failed to file the exact same motion as that served upon Plaintiff earlier. The undersigned notes that the motion served on August 11, 2011, differs from the Verified Motion that was ultimately filed (Compare DE # 45-1 at 37-49 with DE # 43). Defendants, however, appear to raise the same substantive arguments in both versions. The most significant difference between the two versions is that Defendants raise in the filed Verified Motion claims regarding Plaintiff's failure to properly serve Alutiiq 3SG and Alutiiq Global. These claims, however, as discussed below, are properly raised as a basis for sanctions pursuant to § 1927 and are not properly considered under Rule 11. Moreover, Plaintiff does not dispute that Defendants throughout the litigation have consistently taken issue with (and previously sought sanctions relating to) nearly identical substantive bases during the course of the litigation of this case, namely with respect to the proper naming of defendants and the failure to exhaust the CBA grievance procedures. Thus, even if the served and filed motions were not identical, Plaintiff cannot claim that she was not on notice as to the primary bases of Defendants' contentions for seeking sanctions. Given the substantive similarity of the served and filed motions with regard to Rule 11, the undersigned denies Plaintiff's objection to the Verified Motion on this basis. *See Matrix IV, Inc.*, 649 F.3d at 552 (finding sufficient to satisfy Rule 11's notice requirements a letter to plaintiff in which defendant (a) identified certain action as sanctionable under Rule 11, (b) stated that defendant would seek sanctions if the complaint was not voluntarily dismissed, and (c) noted that the letter served as notice of defendant's intent).

Finally, while Rule 11 provides for sanctions against a party and/or a party's counsel, the record does not support any finding against the Plaintiff, Nadja Abreu.

Defendants' contentions, as summarized above, allege legal missteps or procedural errors that originate in counsel's alleged actions, as opposed to those of a party.  At the evidentiary hearing, defense counsel acknowledged as much, and noted that, while the Verified Motion identifies both Plaintiff and her counsel as wrongdoers deserving sanctions, Defendants did not have any evidence with respect to Plaintiff's individual actions and, thus, could not support a claim against Plaintiff for sanctions (DE # 56 at 8). Thus, the undersigned finds any award of sanctions against the Plaintiff inappropriate and turns, instead, to Plaintiff's counsel's actions to determine, under the framework set forth above, whether sanctions are appropriate pursuant to Rule 11.

### 3. Analysis – Merits of Defendants' Claims

On the merits of Defendants' claim that Plaintiff has violated Rule 11, the undersigned considers each of the primary contentions of Plaintiff that Defendants challenge.

### i. Identifying the Proper Defendants

Defendants seek sanctions, in part, based upon Plaintiff's continued pursuit of purportedly improper Defendants (Mele and Alutiiq Global), since the parties do not dispute that Plaintiff's employer-in-fact during the relevant time period was Alutiiq 3SG. In response, Plaintiff states that her decision to pursue additional Alutiiq entities has been justified.

Under Rule 11(b)(2), counsel certifies that "the claims…are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Frivolity requires more than a demonstration that a party's contention is weak.  As another court has noted, "Evidence to support a claim that is 'merely weak' does not merit sanctions." *Sec & Exch. Comm'n v. Monterosso*, No. 07-61693-CIV, 2010 WL 1332256, at *3 (S.D. Fla. Mar. 30, 2010), *quoting Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998); *see also United Nat'l Ins. Co. v. R&D Latex Corp.*, 242

F.3d 1102, 1117 (9th Cir. 2001) (stating that question is whether counsel "had *some* plausible basis, albeit quite a weak one," to assert the questioned contention).

Thus, in reviewing the parties' respective positions, as set forth throughout the course of litigation and summarized below, the key question becomes whether Plaintiff had a basis for bringing suit against its apparent former employer for actions taken by the apparent successor employer(s), even if her case was weak.

As for Defendants' position, they make much of the fact that they had communicated to Plaintiff's counsel through various means, from early on in this case, that Plaintiff had brought suit against the incorrect Defendant.  Specifically, Defendants state that Alutiiq 3SG became Plaintiff's employer on or about February 1, 2010, before any of the facts giving rise to Plaintiff's allegations occurred (DE # 4-1).[5]  Plaintiff, however, continued to pursue Mele, and the Court ultimately entered summary judgment in favor of Mele, finding, "Because Plaintiff's claim against [Mele] are for actions taken by her employer in September 2010, Plaintiff has filed suit against the wrong entity and [Mele] is entitled to summary judgment" (DE # 36 at 4).  The Court's Order Granting Motion for Summary Judgment followed its earlier Order Granting Motion to Amend and Denying Motion to Dismiss as Moot, in which the Court had warned Plaintiff's counsel, "Plaintiff should only proceed against her former employer and [Alutiiq Global] if there are facts warranting their involvement in this case" (DE # 18 at 6).  Defendants, thus, seek sanctions for Plaintiff's purportedly frivolous, and ultimately futile, pursuit of Mele.

Plaintiff has responded to Defendants' challenge to Plaintiff's contention regarding the properly named Defendants throughout this litigation, dating back to her

---

[5] According to the original Complaint, Plaintiff was suspended without just cause on February 9, 2010, (eight days after Alutiiq 3SG became Plaintiff's employer) and terminated on September 8, 2010 (DE # 1-2 at ¶6).  The Complaint does not allege when the actions that formed the basis for the February 9, 2010, suspension occurred, and the count based upon this suspension was not included in the subsequent Amended Complaints.

Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.  In short, Plaintiff acknowledges that Alutiiq 3SG was, indeed, her employer-in-fact during the relevant time period.  Plaintiff, however, argues that this fact does not necessarily absolve Mele of potential liability because the new employer is not necessarily bound by the terms of the CBA, where Mele was the signatory.  In support, Plaintiff cites *Nat'l Labor Relations Bd. v. Int'l Union*, 233 F.3d 1176, 1180 (9th Cir. 2000), which states, "Ordinarily, however, a successor is not bound by its predecessor's collective bargaining agreement, and is free to set the initial terms of employment for its workers without first consulting with their union."

Plaintiff ultimately amended her Complaint to identify three Alutiiq entities – Mele, Alutiiq 3SG and Alutiiq Global – as liable for Plaintiff's claims.  Relatedly, Plaintiff argues several points to establish a basis for potential liability-creating interrelationships among these entities.  In support of this claim, Plaintiff contends that Mele and Alutiiq 3SG are both wholly owned subsidiaries of Alutiiq, LLC, citing two affidavits of Amy Shimek, who identifies herself as Alutiiq LLC's Vice President of Legal Affairs and Associate General Counsel (one of which was filed in a separate lawsuit) (DE ## 4-1 at 2; 9-3 at 3).  In addition, Plaintiff submits copies of the 2010 Limited Liability Company Annual Reports for Mele and Alutiiq 3SG that were submitted to the Florida Secretary of State, which indicate that the two entities share the same principal place of business and mailing address (in Anchorage, Alaska), the same registered agent, and have two managers in common (Richard M. Hobbs, II, and Dean J. Clowers) – Alutiiq 3SG's only two managers, and the only non-entity managers of Mele (DE ## 9-1, 9-2).  Plaintiff has submitted similar information for the 2011 reporting year, along with the 2011 report of Alutiiq Global, which identifies the same common information (DE ## 25-6, 25-7, 25-8).  Plaintiff further contends in the Response to the Verified Motion for sanctions that the Affidavit of Amy Shimek, in which she states, "Thus, all of the issues raised in the Complaint are directed

to Alutiiq 3SG, not Alutiiq-Mele" (DE # 4-1 at 3), is not the definitive word on the full scope of Plaintiff's potential employers.  In this regard, Plaintiff has presented, as evidence controverting Ms. Shimek's statement, her Notice of Termination on the letterhead of Alutiiq Global Solutions, LLC – not Alutiiq 3SG (DE # 39-1).  Finally, Plaintiff argues that Alutiiq LLC has "interrelation of operations and a centralized control of labor relations" regarding security services, and appears to base this contention on correspondence regarding Plaintiff's grievance received from Trish Watson, a Senior Human Resources Manager, who operates on behalf of an Alutiiq entity out of Chesapeake, Virginia, although the Plaintiff's argument is unclear in this respect (DE # 25 at 8-9).[6]

Defendants do not directly respond to Plaintiff's legal argument that Mele may be exposed to liability as the CBA signatory or through some theory of joint employment, although they state that the Plaintiff's union has recognized Alutiiq 3SG as the successor employer, and contend that Plaintiff has offered no facts to refute Defendants' assertion that Alutiiq 3SG was Plaintiff's only employer for the relevant time period, i.e. that Plaintiff's claims are only speculative.

Based on Plaintiff's statements as summarized above, she appeared to base her theory of liability for Mele on two components:  (a) its status as the CBA signatory and/or (b) its potential relationship to Alutiiq 3SG as a joint employer or through some other legally significant interrelationship of the Alutiiq entities.  Plaintiff ultimately set forth a

---

[6] The undersigned further notes that, in the draft "Memo of Understanding" regarding the grievance settlement with Plaintiff, attached to Plaintiff's Response to the Motion to Dismiss (DE # 25-2 at 1), the Alutiiq representative identified for signing the Memo on behalf of Alutiiq 3SG is Patricia Miller, the Human Resources Director for Alutiiq, LLC.  In addition, the undersigned notes that, in the draft Agreement and General Release to be executed by Alutiiq 3SG and Plaintiff, Amy Shimek (who identifies herself in her Affidavit as Alutiiq LLC's Vice President of Legal Affairs and Associate General Counsel) is identified in the signature block as the party to sign on behalf of Alutiiq 3SG (DE # 25-3 at 1-3).

losing argument regarding Mele's potential liability, as evidenced by this Court's Order Granting Motion for Summary Judgment. The question before the undersigned, however, is not whether Plaintiff's arguments were strong but, instead, whether they were frivolous. Under this standard, counsel's actions are arguably a close call. With little doubt, Plaintiff's argument appears attenuated and Plaintiff appears to have made little effort to marshal the necessary facts to support her contention. Nonetheless, the information in the record as noted above suggests a close relationship among the parties and at least some basis to controvert Defendants' assertion that Alutiiq 3SG was Plaintiff's sole employer. Thus, Plaintiff's theory of liability against Mele, albeit weak, was not frivolous.[7]

Likewise, there is no evidence in the record that counsel brought Plaintiff's claims in bad faith or to harass Defendants, nor do Defendants set forth any serious contention in this respect. Therefore, while a close call, the undersigned finds that Plaintiff's efforts to make Mele liable for the allegations contained in the Second Amended Complaint do not rise to a level warranting Rule 11 sanctions.

### ii.   Requirement to Exhaust CBA Grievance Procedures

Defendants additionally argue that Rule 11 sanctions are appropriate based upon Plaintiff's failure to heed this Court's admonition, as well the District Judge's order in the *Jean-Jacques* case, that the CBA at issue requires Plaintiff to exhaust the CBA's grievance procedures before filing suit, and Plaintiff fails to plead (because she cannot do so) that she has exhausted the CBA's grievance procedures. In response, Plaintiff argues that the CBA's grievance procedures are not exclusive remedies, and that the

---

[7] While the undersigned bases this conclusion primarily on Plaintiff's theory regarding the potential interrelationship of the parties, the undersigned notes that Defendants fail to address Plaintiff's (albeit weak) argument regarding Mele's liability as a predecessor-in-interest to Alutiiq 3SG under the CBA, i.e. why it was wholly frivolous, at least as an initial matter, for Plaintiff, as an alleged third-party beneficiary under a contract, to sue a signatory of the that contract.

CBA does not require exhaustion of every component of the remedies before an employee may file suit.  Thus, Plaintiff continues, her statements in the Second Amended Complaint that she has satisfied all conditions to bringing a claim under the CBA are accurate.

Similar to the undersigned's analysis above with regard to identifying the proper defendant, Plaintiff carries a losing argument, but it is not frivolous.  After reviewing the parties extensive arguments with regard to these matters over the course of the litigation, the Court held that, "despite Plaintiff's argument to the contrary, the language of the CBA makes the grievance procedure mandatory prior to filing suit" (DE # 18 at 4).  Indeed, as the Court notes, the language used by the CBA leaves little question regarding the mandatory nature of the grievance procedures.  Plaintiff, however, is not without a colorable argument.  Most notably, despite the well-documented frequent use of mandatory language (such as "will" and "shall") in the CBA's grievance procedures, such language is curiously absent in the only clause that treats whether an employee may file suit.  Specifically, § 7.9 of the CBA states,

> It is understood that the grievance and arbitration procedure provided for in this Agreement is the accepted method for the resolution of all issues which may arise between the Employer and the employee.   Employees are therefore expected to file their grievances prior to filing suits, charges or complaints of any kind, including Title 7 claims.

This Section does not say employees "will" or "shall" file their grievances prior to filing suit, but that they are "expected to."  In these sections of the CBA where mandatory language has been used frequently, its absence in this instance is noteworthy.  Combined with the softened reference to the grievance and arbitration procedures as "the accepted method" (as opposed to the "only" method or "exclusive" method), this paragraph fails to remove all doubt that these procedures are mandatory.  Moreover, the paragraph only requires that an employee file her grievance prior to filing suit; the

paragraph could have stated (but did not) that an employee must file and exhaust the grievance procedures, or file and (at least) follow the grievance procedures prior to filing suit; instead, this Section, by its own express terms, only requires that a grievance be filed prior to filing suit.  In this respect, according to the record, neither Plaintiff nor Defendants appear to dispute that Plaintiff had filed her grievance prior to filing suit.

In the end, for the reasons the Court noted in its Order Granting Motion to Amend and Denying Motion to Dismiss as Moot, and considering the case law that requires an employee to exhaust a collective bargaining agreement's grievance procedures, the above arguments do not carry the day.  To avoid Rule 11 sanctions, however, they must be more than frivolous.  For the reasons described above, the undersigned finds that Plaintiff's claims are not frivolous.  Plaintiff had a basis for challenging the exclusivity of the grievance procedures, albeit a weak and ultimately losing basis.  The strength (or lack thereof) of Plaintiff's argument, however, does not warrant sanctions.

Defendants make much of the fact that the Court also admonished Plaintiff's counsel in the Order Granting Motion to Amend and Denying Motion to Dismiss as Moot, stating that "pursuant to [Rule 11], prior to filing a Second Amended Complaint, counsel has an obligation to make a reasonable inquiry as to whether Plaintiff complied with the grievance procedure" (DE # 18 at 5).  Defendants appear to suggest some element of bad faith in Plaintiff's counsel, almost immediately thereafter, filing the Second Amended Complaint, which contained the same proposed allegations as those earlier before the Court.  The undersigned, however, finds that this decision, at worst, amounts to poor judgment in pursuing a weak case.  On notice that the Court would not be receptive to counsel's legal theory regarding the nature of the CBA's grievance procedures, and aware that the weakness of such theory may be so questionable as to warrant Rule 11 sanctions, counsel chose to pursue them anyway.  Counsel, thus, risked exposure to sanctions via Defendants' subsequent Verified Motion.  The Court's admonition,

however, does not necessarily result in Rule 11 sanctions where, as here, Plaintiff's counsel was not without a nonfrivolous basis to pursue his contentions. The undersigned notes that the only way to obtain appellate review of a District Court's determination is to first pursue a claim in the District Court, even if Plaintiff was on notice that the District Court is not receptive.

Moreover, the undersigned finds that Plaintiff cannot be fairly deemed to be "on notice" by the District Judge's adverse conclusion in the *Jean-Jacques* case regarding the CBA grievance procedures. While Judge Altonaga arrived at a similar conclusion to the Court in this case, Plaintiff was not required to acquiesce to Judge Altonaga's ruling and forego pursuing his contrarian legal theories regarding the grievance procedures in front of this Court. The nature of litigation allows parties seeking to change the law to pursue their claims through appeal, if they decide such action is appropriate.

### iii.   Failure to Properly Serve Alutiiq 3SG and Alutiiq Global

While Defendants include Plaintiff's failure to serve Alutiiq 3SG and Alutiiq Global as a basis for sanctions, these actions do not comport with those warranting Rule 11 sanctions. At the outset, it is unclear whether Defendants are asserting Rule 11 or Section 1927 as a basis for sanctions for the failure to properly serve. As previously discussed, these claims were not included in the Rule 11 letter served on August 11, 2011, and, thus, the safe harbor provision was not satisfied.[8] Even if Defendants were to claim that Plaintiff was otherwise on notice under Rule 11 as to this issue, Plaintiff's failure to serve the Defendants is not properly considered under Rule 11. Instead, such action (or inaction) would be construed as a failure to prosecute, or a multiplication of proceedings, as discussed below. Notably, Defendants do not appear to argue that the

---

[8] The only Rule 11 letter that included this claim was served after the entry of Final Judgment; and, therefore, under *Gwynn v. Walker*, 532 F.3d 1304, 1308-09 (11th Cir. 2008), it was not timely since it failed to provide a safe harbor.

failure to serve them was frivolous, but, rather, that the failure to serve them multiplied proceedings.  Therefore, based upon a careful review of the record, the undersigned finds that Rule 11 sanctions due to Plaintiff's failure to serve Alutiiq 3SG and Alutiiq Global are inappropriate.  The propriety of sanctions pursuant to 28 U.S.C. § 1927 is discussed below.

> **B.**     **Sanctions Based Upon 28 U.S.C. § 1927 Are Also Not Warranted.**
>
> > **1.**     **Introduction**

Defendants also rely upon 28 U.S.C. § 1927 as a basis to recover their costs from Plaintiff's counsel.  The undersigned, therefore, considers whether the actions of Plaintiff's counsel warrant sanctions under this statute.

Pursuant to 28 U.S.C. § 1927, federal courts may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously. . .to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The provisions of § 1927 are strictly construed.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997) (citing *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1382 (5th Cir. 1979)).

Section 1927 is not a "catch-all" provision for sanctioning objectionable conduct by counsel.  *Peterson*, 124 F.3d at 1396.  Rather, to justify an award of sanctions pursuant to Section 1927, three elements must be satisfied:  an attorney must (1) engage in unreasonable and vexatious conduct; (2) this conduct must multiply the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct.  *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 786 (11th Cir. 2006).  In order for § 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings.  *Peterson*, 124 F.3d at 1396.  As such, objectionable

conduct – even "unreasonable and vexatious" conduct – is not sanctionable unless it results in proceedings that would not have been conducted otherwise. *Id.*

In addition, for sanctions under Section 1927 to be appropriate, something more than a lack of merit is required. *Id.* at 1129. Section 1927 is intended to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)); *accord Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

Section 1927 is concerned with counsel's actions during the litigation. As the Eleventh Circuit has observed, "Section 1927 is directed at the unreasonable and vexatious multiplication of proceedings." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). In contrast to Rule 11 sanctions, which are aimed primarily at pleadings, § 1927 focuses on an attorney's "dilatory tactics" during litigation. *Id.* (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001)). Therefore, even if an attorney files a complaint that he knows is frivolous, § 1927 sanctions are not appropriate unless the attorney delays judicial proceedings after the complaint has been filed. *See Peer*, 606 F.3d at 1314. This limitation of review to post-complaint activities comports with the Eleventh Circuit's observation that § 1927 must be strictly construed because it is penal in nature. *Norelus v. Denny's Inc.*, 628 F.3d 1270, 1280-81 (11th Cir. 2010) (citing *Peterson*, 124 F.3d at 1395). Therefore, the analysis below focuses on the actions of Plaintiff's counsel after filing the complaint in the case at bar.

2. <u>Unreasonable and Vexatious Behavior</u>

As the language in *Peer* suggests, there are two initial components to this inquiry – whether counsel's actions were "unreasonable and vexatious," and whether the actions created a "multiplication of proceedings." *Peer*, 606 F.3d at 1314. As detailed below, the undersigned concludes that counsel's actions were not unreasonable and

27

vexatious because counsel's actions were not wholly without merit and, thus, § 1927 sanctions are not appropriate.

Sanctions are warranted only when "an attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (citations omitted). In the context of § 1927, "bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.* Furthermore, a "determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.* at 1242. To merit § 1927 sanctions, "something more than a lack of merit is required." *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007) (quoting *Amlong & Amlong, P.A.*, 500 F.3d at 1193). Finally, the determination of frivolity should be on a case-by-case basis. *Hudson*, 499 F.3d at 1262.

For example, in *McMahan v. Toto*, 256 F.3d 1120, 1128-29 (11th Cir. 2001), the Eleventh Circuit found that the district court did not abuse its discretion in not awarding sanctions pursuant to § 1927 where the "critical question" in that § 1927 inquiry was whether counsel's conduct was "unreasonable and vexatious." The Eleventh Circuit and the district court had rejected counsel's argument as to the collateral effect of an earlier related New York state court decision on the federal district court action, "but that merely means there is no merit to the position. Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case." *Id.* at 1129. The court further noted that the New York court opinion offered some language supporting counsel's interpretation, "although not enough to convince [the court that] their interpretation of the opinion is correct." *Id.* Thus, for an attorney's actions to be unreasonable and vexatious, an attorney's claim must be more than merely meritless.

In another example, in *Hodges v. Publix Super Markets, Inc.*, 372 Fed. Appx. 74, 75 (11th Cir. 2010), Hodges, a former Publix employee, first sued his employer for violations of the Family Medical Leave Act.  After that matter settled, plaintiff sued his former employer again, this time pursuant to the Americans with Disabilities Act and the Florida Civil Rights Act, but alleging the same facts as in the first suit.  Publix prevailed on its argument of res judicata; however, the Eleventh Circuit affirmed the lower court's finding that sanctions were not appropriate.  The court noted that, although plaintiff lost his case based upon res judicata,

> this does not necessarily render his argument frivolous, unreasonable, or without foundation.  Hodges made a reasonable argument that [the first case] challenged only Hodges's termination and the present action challenges only Publix's failure to rehire him…Because Hodges raised a cognizable argument against the application of res judicata, he did not recklessly pursue a frivolous claim under § 1927."

*Id.* at 78-79.

Accordingly, a claim with some legal basis would not be considered unreasonable and vexatious.  *See Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983) (finding counsel's actions were not vexatious where counsel had presented an arguable legal theory to support the claim).  Thus, a finding of unreasonable and vexatious conduct turns on whether counsel had a legal basis for a challenge.  As stated above in the Rule 11 analysis, the undersigned finds that Plaintiff's counsel's contentions regarding the liability of Mele were not wholly frivolous.  Accordingly, the undersigned concludes that Plaintiff's counsel should not be subject to § 1927 sanctions because his conduct was not unreasonable and vexatious.

### 3.    Multiplication of Proceedings

The undersigned, nonetheless, considers the second *Peer* component.  In this regard, a review of cases that have considered other counsel's purported multiplication of proceedings puts in context the actions of Plaintiff's counsel in the case at bar.  For

example, the Court of Appeals found sanctions appropriate in *Julien v. Zeringue*, 864

F.2d 1572 (Fed. Cir. 1989).  At the outset, the court noted that plaintiff Julien's counsel

filed 14 motions for extensions of time and met only one court-imposed deadline.  *Id.* at

1573.  Specifically, after moving several times to extend the deadline for his appellate

brief, Julien's counsel ultimately filed it almost seven months after it was originally due.

The court further noted that Julien's counsel

> continually missed deadlines, requested at least 10 extensions of time to
> file his briefs, and submitted a joint appendix 11 months after he was given
> extensive and explicit instructions on how to prepare and file a joint
> appendix.  After being warned that no further time extensions would be
> granted, he missed the deadline for filing Julien's reply brief and joint
> appendix.

*Id.* at 1575-76.  The court additionally noted that Julien's counsel's statement, that the

case at bar was his only remaining piece of significant litigation, was patently false

because, at the very least, counsel had another case in front of the same court.  *Id.*  The

court concluded that the "judicial process has been badly abused," and sanctioned

Julien's counsel pursuant to 28 U.S.C. § 1927.  *Id.* at 1575.

The Eleventh Circuit, likewise, has found sanctions appropriate where an attorney

has unreasonably and vexatiously multiplied proceedings.  *See, e.g.*, *Spolter v. Suntrust*

*Bank*, 403 Fed. Appx. 387, 389 (11th Cir. 2010) (affirming the district court's order

sanctioning the pro se litigant pursuant to § 1927 after the litigant filed "multiple,

successive motions for reconsideration and recusal" to remove the district judge from

the case).  The Eleventh Circuit, however, has also found § 1927 sanctions unwarranted

in other instances, despite arguably culpable actions by counsel.  For example, in *Peer*,

the attorney knowingly filed a frivolous complaint, but did nothing more than file the

complaint, answer a counterclaim, file initial disclosures, and conduct limited discovery,

all "within a reasonable amount of time."  *See Peer*, 606 F.3d at 1314.

In the case at bar, Defendants complain that Plaintiff multiplied proceedings, first, by continuing to bring suit against Mele, instead of against Alutiiq 3SG – Plaintiff's employer during the timeframe in question.  Counsel's insistence on pursuing Mele, Defendants continue, resulted in needless litigation of this issue when defense counsel had agreed to accept service on behalf of Alutiiq 3SG if Plaintiff's counsel would simply amend the complaint accordingly (DE # 43 at 9-10).  As the undersigned has noted above, however, Plaintiff ultimately amended her complaint to include more than just Mele as a Defendant, and Plaintiff was not without a colorable argument (albeit a losing one) for pursuing Mele.  Even setting this basis for the ruling aside, Defendants' contention with respect to naming Mele cannot appropriately be considered as sanctionable conduct under § 1927.  Mele's inclusion as a Defendant was consistent from the first State complaint.  Thus, this contention is properly considered above as a potential Rule 11 violation.  Mele was not introduced later in the litigation and cannot, therefore, be properly considered as an action during litigation to multiply the proceedings.  *See Peer*, 606 F.3d at 1314.  Moreover, although the Complaint was amended multiple times in an effort to allege sufficient facts to establish liability, and thus Mele was required to file multiple motions to dismiss, it was not unreasonable for counsel to do so based upon the previously described showing of interrelatedness of the three Defendants.  At any rate, the undersigned rejects Defendants' contention that § 1927 sanctions are warranted due to Mele's inclusion as a Defendant.

Defendants further argue that Plaintiff's counsel multiplied proceedings by naming as additional defendants (in the Second Amended Complaint), but failing to properly serve, Alutiiq 3SG and Alutiiq Global.  In failing to properly serve these additional defendants, however, Plaintiff did not multiply these proceedings.  These defendants filed a motion (and reply in support thereof) to dismiss the Second Amended Complaint for insufficient service, which was granted; then, they filed a response to

Plaintiff's motion for additional time to serve the defendants, which was denied.  Even assuming that Plaintiff had not failed to properly serve the parties, they would have still filed a motion to dismiss on the merits, as evidenced by the additional bases in their motion to dismiss.  At most, Plaintiff required these parties to respond to Plaintiff's motion for an extension of time to effect service – hardly sufficient action to rise to the level of multiplication of proceedings under the case law cited above.[9]  These actions do not demonstrate the "multiple, successive motions" of *Spolter*, 403 Fed. Appx. at 389.  Similarly, the actions do not consist of repeatedly tardy filings, along with disregard for detailed court orders and misrepresentations of counsel's responsibilities to the Court.  Cf. *Julien v. Zeringue*, 864 F.2d 1575-76.  Instead, counsel's actions are more limited than others that have not warranted § 1927 sanctions.  Cf. *Peer*, 606 F.3d at 1314 (noting that attorney knowingly filed a frivolous complaint, but did nothing more than file the complaint, answer a counterclaim, file initial disclosures, and conduct limited discovery, all "within a reasonable amount of time").

Because § 1927 sanctions may only be based on actions in this case after instituting suit, and because the undersigned finds that those subsequent actions did not unreasonably or vexatiously multiply the proceedings, the undersigned recommends that sanctions pursuant to § 1927 be denied.[10]

---

[9] The undersigned notes that Federal Rule of Civil Procedure 4(d) imposes a duty to avoid unnecessary expenses of serving the summons on a party to be served.  Rule 4(d) further provides procedures for waiver of service, and provides an incentive to encourage Defendants to voluntarily accept service by mail.  Nonetheless, Defendants are entitled to stand on their rights to proper service.  The undersigned, however, finds curious the extent to which service became an issue in this case.  In particular, the undersigned notes that defense counsel's offer to accept service on behalf of the other Defendants was conditioned on Plaintiff's giving up certain rights, namely any related claim against Mele.  The undersigned does not fault Plaintiff for failing to accept the offer of waiver in exchange for giving up such rights.

[10] Because the undersigned finds that counsel's actions do not satisfy the first two *Peterson* elements that focus on entitlement, the undersigned does not reach the third element concerning the amount of sanctions.

C.    **Sanctions Are Also Unwarranted Under § 1988.**

While the Defendants' Verified Motion is captioned as a motion seeking sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, Defendants briefly include at the end of their Verified Motion a plea for sanctions pursuant to 42 U.S.C. § 1988 as well (DE # 43 at 13).[11] Defendants argue that they are entitled to fees pursuant to § 1988(b) because Plaintiff's § 1981 claims fail on their face.  In response, Plaintiff principally argues that fee-shifting is unwarranted because Plaintiff's counsel did not refuse to acknowledge clear precedent or assert a claim that was knowingly based on a nonexistent interest (DE # 44 at 6).

Under § 1988(b) a Court in its discretion may tax attorney's fees against a losing party in favor of a "prevailing party" in a § 1981 suit.  Fee awards, thus, require a party to prevail on the merits of its case, as opposed to procedural victories.  *See Hanrahan v. Hampton*, 446 U.S. 754, 758-59 (1980).  A defendant may be entitled to fees as a prevailing party, but the standard is described differently than that for awarding fees to a prevailing plaintiff.  Specifically, a prevailing defendant generally will be required to prove that plaintiff's suit was frivolous, unreasonable, or without foundation.  *Dayan v. Bd. of Regents of the Univ. of Ga.*, 620 F.2d 107, 108 (5th Cir. 1980).

Plaintiff brought its § 1981 claims only against the two entities that were never properly served – Alutiiq 3SG and Alutiiq Global (DE # 21 at 6).  These entities "prevailed" over Plaintiff when the Court entered the Order Granting Motion to Dismiss, which dismissed the claims against these defendants based upon Plaintiff's failure to

---

[11] Defendants also suggest that, in a Section 301 case, a prevailing party is entitled to fees when an opponent's suit is frivolous.  Section 301, however, does not, itself, authorize attorney's fees.  *Chrysler Motors Corp. v. Int'l Union*, 959 F.2d 685, 689 (7th Cir. 1992) (cited by Defendants).  Moreover, Defendants fail to separately analyze the propriety of a fee award under Section 301, except to the extent that the same argument is made under Section 1927 and Rule 11.  Accordingly, the undersigned does not separately analyze the availability of fees pursuant to Section 301, specifically.

properly serve them (DE # 37 at 1, 4-5).  The undersigned notes, however, that Plaintiff's § 1981 claims have not yet been resolved.  While Defendants essentially achieved a procedural victory through the Order Granting Motion to Dismiss, the Court never reached the merits.  Moreover, the almost identical claims continued and are being litigated in the separately filed case of *Abreu v. Alutiiq 3SG, LLC*, No. 12-20010-CIV-SEITZ.  In that case, the Court has not entered a final order resolving the merits of Plaintiff's claims.  In essence, these Defendants achieved a procedural victory in obtaining dismissal of the § 1981 claims due to insufficient service, but litigation over the merits of the claims continues in the separately filed matter.  As the Court has not made a final determination on the merits of Plaintiff's claims, the undersigned declines to make a ruling as to whether such claims are frivolous or vexatious.

IV.    <u>CONCLUSION</u>

Therefore, for the reasons stated above, and upon a review of the record as a whole, it is hereby **RECOMMENDED** that Defendants' Verified Motion for Rule 11 and Section 1927 Sanctions (DE # 36) be **DENIED**.

The parties will have fourteen days from the date of this Report and Recommendation, i.e. until August 17, 2012, within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

Any response to objections must be filed within seven days from the date the objections are filed.

**DONE AND SUBMITTED** in chambers, in Miami, Florida, on August 3, 2012.

_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:
The Honorable Patricia A. Seitz,
        United States District Judge
All counsel of record

35